The third and final case to be argued today, Heidel v. the Governor of New York State, the Governor, Mr. Banistieri. Good afternoon, Judge Robanus. Good afternoon, Your Honors. I represent the plaintiffs and what would be the putative class, the appellants in this case. Perhaps this is an odd way to begin, but I do just want to be clear that this is not a political case. This is not an anti-vax case or even, for that matter, an anti-orders case, as we note in the complaint. An anti-orders case, meaning the plaintiffs are not coming forward saying that the orders themselves, way back when, they filed now over two years ago, should be vacated. At the risk of asking the obvious, where do you state in the record who your clients are, aside from their names? In the record. I don't want a representation, extra record of what they do or anything. Where does it say what your clients do for a living? Well, in the complaint, we do say. Forgive me, Your Honor, I'm actually on trial across the street and left my order to bring my iPad, so I'm using my, yeah, tight day. So I'm using my phone where I've downloaded this. But it is... I'm sorry, Your Honor? You will have time to be in repose after your basic argument, and you'll be able to find it. And let me just be clear. I'm looking at page 21 of the appendix, which is the complaint. I don't know if that directs you. I'm guessing that Italianissimo, because it is Italianissimo Ristorante, I will deduce that it is a restaurant. Yes, Your Honor. You don't allege what murdered by the mob is, I'm hoping. It's not a literal description. It is a theater group, Your Honor. But I guess my question there is going to go to the merits, which is, how are we supposed to understand what you've alleged the damages to your business or your clients' businesses if the nature of your clients' businesses is not even alleged in the complaint? Well, Your Honor, I do see it. I understand Your Honor's concern, and I do have something to say on that, but it would be paragraphs 162, 3, and 4, where we note what the particular entities at least are. But then they do allege that they were subject to the orders. Now, Your Honor, is this something which, frankly... There are a lot of things subject to the orders, but we don't know what they did. Well, then this could at least be addressed by amendment, Your Honor. Instead, Judge Castell, largely with respect to the court, I think did not grant all favorable inferences towards the plaintiffs as he was, and this is something that could have been... But you can't draw inferences from a vacuum. You could imagine all sorts of things, but those aren't reasonable inferences drawn from the record. Now, I think maybe for the ristorante, we can infer that it was a restaurant. Yes, Your Honor. I have no idea what murdered by the mob is. I mean, I have an idea, but that's extra record. Agreed, Your Honor. I'm granting you the reasonable inference that it doesn't actually involve a murder syndicate. It does not, of course. But you understand murdered by the mob tells us nothing. I understand, Your Honor. It was agreed, and this is... Or everything. Yes, and this is a mistake by me. Then fine. This did come out at the pre-motion conference quite a long time ago before Judge Castell, where we did discuss in a little bit of detail what the entities did. And this is something, again, which we could have amended, and perhaps we made a pleading error right there, and I'll take that, Your Honor. But we could have amended it, and I think that they should have their day in court because we could so amend. And, indeed, that is one of the points I want to raise, even though we're focused on the elements, let's say, of a takings claim or the ability... Arguably one of your first or most foundational failings in the complaint to tell us even what you do, what kind of a business this is to begin with. But I may have missed allegations in the complaint that are specific enough to say exactly what was the impact, what your clients could or could not have done, assuming they were restaurants. Why is it? Concretely, they had to shut down their in-house dining, but they couldn't have takeout food or whatever. I just don't see the allegations. And, Your Honor, forgive me... If you're at the point of trying to establish a categorical taking, and you can get to separately the point of whether you're also alleging a non-categorical taking, but if you're alleging a categorical taking, you've got to tell us categorically what was taken and what you couldn't do, why you couldn't do the half measures like, say, takeout food that other dining establishments were able to continue. Agreed, Your Honor. Am I making... You're perfectly clear. So how do you respond to that? That at least we could be remanded to address those issues because these are not incurable pleadings deficiencies. As the Court noted, Italianissimo is a restaurant. Murdered by the Mojave is a theater group. I'm simply saying this now, and I know that we could rather amend the pleading, and this did come up before Judge Costell. The weigh station was a bar, and the weigh station and murdered by the mob were closed down almost immediately after the initial order on March 12th of 2020. Can I just back up then? And I'm sorry. No, please, Your Honor. You probably should know this. Did you ask the district court for permission to file an amended complaint? No, he was not interested in an amendment. Well, whether he was interested or not is a different question of whether you asked. We did make, at least at the pre-motion conference, we made the argument that if the court had a concern, we would seek to amend the pleading. When he rendered the decision, he entered judgment on behalf of the defendants. Meaning in my experience, in the district court at least, when the district judge believes that there may be an opportunity to amend, they often will give us that opportunity, especially if we've at least raised it orally. Again, there was not argument on the motions itself, Your Honor, but at least there was a pre-motion conference with Judge Costell in almost exactly two years. So it was raised orally in a pre-motion conference? That's correct. It was a phone call given the time, and at least then it was raised, Your Honor. I need to look back at our actual motion to dismiss pleading to see if it was raised there. I see that I'm running out of time, so if I should wait, Your Honor? No, keep going. Okay, thank you, Your Honor. So as noted that Judge Nardini raises, this is a pleading, and there may be some deficiencies, but they're hardly incurable, even if this is not the focus of any of the party's briefs. We could plead with more specificity to the extent that that was needed with regards to these three, a restaurant, a bar, and a theater group that were closed and when they were closed, and that because of the times, at least the weigh station and the murder by the mob closed, it was categorical takings. They could not proceed at all. And as noted as I started, this is not a complaint about the orders as such, but that there should be just compensation, that there was a regulatory taking under the law. With regards to the state's argument about the 11th Amendment, we're not saying that Rule 23 trumps the 11th Amendment, but we did notice rather a reference to the 1997 Sweetom case, this is in our papers, where the Supreme Court said you should go to state court first unless there's not an adequate remedy in the state courts. In the New York Court of Claims, something I learned in this case, if you have a business injury, then all the members of the class must be identified at the very beginning of the case. So could you explain what is the availability or unavailability of class relief have to do with the Fifth Amendment? Your clients are the ones before us, and they have the right, I think you have not disputed, to go to the New York Court of Claims and have their individual claims adjudicated, correct? Yes. So why is it that their inability to seek class relief in the same way that could be afforded in a federal court somehow alters the Takings Clause analysis, or the 11th Amendment analysis, I suppose? Well, because they are the 11th Amendment analysis. Agreed. Yes, Your Honor, it's an 11th Amendment question. And I'm saying because then they are not permitted to be putative class representatives. No, I'm just saying, why does that matter? Who cares? Well, because then there's an entire class that is not afforded the opportunity to proceed in the courts. As a class. As an entire class. Every member of that class has the ability to be vindicated in the Court of Claims. Yes, but then they would not have their Rule 23 rights. This is not, say, 18th. But Rule 23 is a creature of federal law, right? Yes, Your Honor. And in federal courts, you cannot sue a state for damages, right? Under the 11th Amendment, right? Yes, Your Honor. So I'm not sure I understand your predicate claim that if you don't have a great ‑‑ I mean, I guess I understand the claim, I suppose, that somehow if you don't have a state remedy, the Takings Clause would somehow, I guess, supersede the 11th Amendment? The Fifth Amendment would supersede the later enacted 11th Amendment and create an exception to it? I'm not sure that works, but let's say that's true. I think that is what Sweet's, in essence, is saying, that if you do not have an adequate remedy, putting aside what I hear you on. Let's assume it's true. Let's assume that somehow there's an exception to the 11th Amendment if you have no alternative forum. You have to have a forum. Therefore, you can come to federal court. What do you do in a situation like this where you have a state forum? It's just not as procedurally favorable. You're saying that we should articulate an even bigger exception to the 11th Amendment? Not exactly, Your Honor, because I'm not saying it's one of procedural favorableness or not. There is no class action right in the Court of Claims. There is a name but name only, meaning it's not ‑‑ Right, the difference between a series of individual claims and a class action is procedural. Yes, Your Honor, but you said the same or more favorable. It could be more favorable under Rule 23 than under the Court of Claims so-called class actions, but that by itself wouldn't matter. It's the adequacy of the ability for a class to proceed. Under the Court of Claims Act, each individual plaintiff needs to be named for this kind of damages, and their damages need to be named, meaning there is no way to proceed in the Court of Claims in a true class action. There's reference to ‑‑ In a federal type class action. Not even in a federal type class action, Your Honor. In any notion of the term. I know the term class action ‑‑ So who says you have a right to have a class action under the Takings Clause? That's my question, I think. Maybe that is how I back it up. Yeah, well ‑‑ Who says there's a right that the 11th ‑‑ there's an exception to the 11th Amendment of the Constitution for a class action? Well, again, I would go back to sweet time. If the idea is that there's not an adequate state court remedy and you can proceed in the federal court, it would seem to me that there's even more force to the notion that this class, which does not have an adequate remedy, should be able to proceed in the federal court. I mean, I can see that, Your Honor's issue with what I'm saying, but the point is I understand what the Court is saying. These three plaintiffs could proceed or could have proceeded in the Court of Claims. And they ‑‑ And so would every member of the class. Yes, but not in a real world way, Your Honor. I mean, the members of the class were largely, or the members of the class here, the categorical takings class, at least, are largely out of business. And you have, at this point now ‑‑ Aren't your clients out of business? Yes, Your Honor. Then why are we now supposing that other companies out of business cannot sue but you can? Yeah, but it's kind of the difference between, say, mass torts and Rule 23, Your Honor. If you meet Rule 23 requirements, you can proceed in the federal court under Rule 23, even if you could join at least hundreds of individuals. It's not impossible. Maybe when we think of securities class actions, that might be. Here it would be functionally, even at the time, impossible to get a bunch of business owners whose companies were defunct and to get them to group together. Individually they could have, but it would have ‑‑ So let me ask you this. Did class actions exist when the 11th Amendment was passed? No. Not only was there no Rule 23, but I don't even believe there was the kind of workaround that began about 100 years ago. So I guess my question is, how is it that somehow this exception has come to pass, that now the 11th Amendment means something different from what it meant before once class actions were invented in federal court in the form they take? I don't think that the 11th Amendment means something different, but in the same way that we have more rights now than we did over 230 years ago, then we should be able to proceed with those rights. The Court of Claims, as constituted in New York State with regards to class actions, doesn't allow those that have a takings claim to be able to join with others. You need to name each individual plaintiff and their amount of damages ab initio, at the very beginning of the case. I understand you're describing it, but you're sort of ‑‑ Are you not arguing that this is an exception to the 11th Amendment? I thought that's the fundamental point you're making. I'm sorry. It would be, but like I said, I think that the Supreme Court and the suite ‑‑ And the exceptions change over time. No, but I think there can be an expansion of rights. Certainly the Sweet Time case was an access to the court's case where there was a question as to whether or not the plaintiff there was able to even bring her claim at the time, whether it was a justiciable claim, and the Supreme Court found that it was and made the comment that if there's not an adequate state court remedy, a party, a plaintiff may proceed in the district court. And what I'm saying, if that applies to one individual, it should apply to many who would be grouped together who would otherwise have Rule 23 rights. Okay. Thank you very much. Thanks for all the extra time. You've reserved time for rebuttal. Thank you. Mr. Brody? Good afternoon, and may it please the court. Elizabeth Brody for the State Appellees. I would just like to address two points that opposing counsel mentioned during his argument. The first is on leave to amend. At page 7 of the appendix, there's a minute entry for the pretrial conference, which says, quote, the court offered plaintiffs leave to replead in light of the defendant's pre‑motion letters, and the plaintiffs do not wish to amend. So, based on the record, it was their decision. And I'll add that they did not seek to amend when they opposed the motions to dismiss or even in their briefing to this court the first time they asked. Ms. Brody? Yes. Can you give us an indication of where on page A7? It's in the ‑‑ Go ahead. It's about two‑thirds of the way down. It's on page 29, right? That's correct, Your Honor. Opposing counsel also mentioned that the nature of plaintiffs' businesses was pled at paragraphs 162 to 164 of the complaint, and those paragraphs, this is at pages 47 and 48 of the appendix, and those paragraphs simply read, the Way Station Bar was a business, Italianissimo Ristorante is a business, and I do understand Judge Nardini's point about the fact that it's a restaurant being part of the name, and paragraph 164 says murdered by the mob was a business, so I don't believe that those paragraphs do address the nature of plaintiffs' businesses. This court should affirm the district court's decision because plaintiff's takings claims ‑‑ One of them says bar and one of them says ristorante. Don't they tell you what the business is? Murdered by the mob clearly does not, but one of them says bar and the other says ‑‑ Isn't that enough to say, to identify the nature of the business? We don't believe it is because that's just the name of the business, but if Your Honor is fine, that's sufficient, and there are multiple independent bases to affirm the district court's decision. The first would be that plaintiffs' claims are barred by the 11th Amendment. It is well established that a state and its officials are immune from just compensations claims brought in federal court. Indeed, just two years ago, this court affirmed that principle in a summary order, Morabito v. New York, a ruling that was consistent with one of this court's published decisions from 1971, Knight v. State of New York, and with six recent decisions from other courts of appeals across the country. As each of these decisions explains, the 11th Amendment bars suit against a state or its officials for money damages, and the 5th Amendment does not supersede the 11th Amendment. Nor does the Supreme Court's recent decision in Nick require a different result. Nick addressed the substance of a takings claim, specifically when the claim ripens, but did not, indeed could not, address sovereign immunity because the only defendant in that case was a municipality, the township of Scott. Moreover, Nick repeatedly compared the 5th Amendment to other constitutional rights that may be subject to a sovereign immunity defense. Even if, as plaintiffs argue, the 11th Amendment somehow depends on whether the state offers just compensation remedies in its own court, this court has squarely answered that question with respect to New York's courts on two occasions, holding that New York has, quote, reasonable, certain, and adequate provisions for obtaining just compensation. And that's the Progressive Credit Union case and Kurtz v. Verizon. Turning to the merits, the complaint, in any event, fails to state a categorical takings claim because plaintiffs do not plausibly allege that the executive orders deprive them of all economically viable, beneficial, or productive use of their property. The orders on their face were temporary, which defeats a categorical takings claim, as the Supreme Court made clear in Tahoe Sierra. Moreover, plaintiffs have not plausibly pleaded that their businesses were destroyed by these orders. With respect to plaintiff murdered by the mob, there's no allegation as to what kind of business that was. And the complaint does not yet, and with respect to plaintiff Italianissimo, the complaint does not even allege that that business closed at any point. The executive orders on their face, as Judge Nardini mentioned, also allowed for economic activity to continue at multiple types of businesses, including, for example, allowing off-premises consumption at restaurants. Ms. Brody, on this question of the court of claims, if I can turn back to that, if we affirm the district court's decision on state sovereign immunity grounds, it's your view that the plaintiff would still be able to bring individual takings claims before the New York court of claims? Plaintiffs have not disputed that New York offers adequate remedies for just compensation. And what is your view? Do you believe, or are you prepared to state that it's the position of the Attorney General that they would be able to proceed with their takings claims in the court of claims? I'm not sure what representations I can make as a government attorney about future cases that may arise, and I certainly can't make any representations as to other defenses that the state might raise. We're talking about these defenses. But as to sovereign immunity. These claims. Right, there would be no sovereign immunity defense if they brought their action in the court of claims. In your view, the rulings in favor of the state of the dismissals, were they with or without prejudice? I believe that Judge Kastel said they were with prejudice because amendment would be futile. But if they were based on the 11th Amendment, then that means they were based on a lack of Article III subject matter jurisdiction, right? And if that's true, wouldn't they, or shouldn't they, have been without prejudice so that the claims could be brought in a state forum? I agree that typically when dismissal is on the basis of sovereign immunity that the dismissal is without prejudice. Whether sovereign immunity, strictly speaking, is Article III subject matter jurisdiction that's completely equivalent to something like standing is an open question. It's up for debate. But I do agree that courts typically. Why isn't it something between the two? It seems to me that the ruling is with prejudice with respect to the right to bring the same claim again in federal court. The federal court has already dealt with the question. Sovereign immunity precludes bringing the state, the claim against the state in federal court. So it's with prejudice with respect to a subsequent claim in federal court, but not with prejudice with respect to bringing the claim in state court where sovereign immunity doesn't bar it. I'm having, for some reason up here, I'm having trouble finding the court's exact language whether it was dismissed with or without prejudice. Well, you said that the judge said it was with prejudice. I believe so. And it can perfectly well be with prejudice with respect to whether the claim may be brought again in federal court, but not with prejudice with respect to whether it can be brought as appropriate in state court where sovereign immunity would not bar it. I agree. And I think the district court made clear that the basis for the dismissal of the claims against the state was sovereign immunity rather than, although certainly the district court's holding on the merits would apply equally to the state. But I think it's clear from the decision that that is the basis for the dismissal. If we were hypothetically to agree with you on the merits of the claims against the state and if our decreed language said something like the decision of the district court or the judgment of the district court with respect to the state defendant is affirmed without prejudice to the plaintiff bringing an action in state court, is that the sort of thing that you would object to or suggest was incorrect on our part? We think that we agree with the district court on its merits analysis of the takings claims themselves. So we would, of course, prefer to create a language that says it was dismissed with prejudice because it would be futile, indeed, for them to try and amend their complaint to reassert any of these claims. But I can't say that we would have a strong objection to what you just proposed. Thank you very much, Ms. Burke. Ms. Vizgaitis? Good afternoon, and may it please the court, Rebecca Vizgaitis for the city at Palais. The district court correctly dismissed plaintiff's claims against the city because plaintiffs failed to plausibly allege any constitutional violation against the city. As the state has persuasively argued, the plaintiffs failed to plausibly allege an unconstitutional taking. They could not state a categorical taking claim because the alleged business losses they point to, even assuming that there was adequate information about the nature of their businesses, it would be far beyond the realm of what would qualify as a categorical taking under the Supreme Court's decision in Lucas. As this court has observed, the Supreme Court has recognized a categorical taking only in cases alleging a taking of real property. But even if there could be a viable Lucas claim involving something other than land, this kind of alleged business loss just can't get there. Lucas is exceptionally narrow, and a viable claim must allege that a regulation denies all economically beneficial or productive use. And the plaintiffs simply failed to plausibly allege that. This is meant to account for something that is the equivalent of physical appropriation. But here, even assuming that we know that the plaintiff's businesses were restaurants and bars and a theater group, there would still have been working pieces of equipment that they could have sold or repurposed. There still would have been, in one case, plaintiffs acknowledged that one of the plaintiffs did not even close. Simply under the Lucas analysis, this just can't be the kind of complete loss of value that is enough to state a categorical taking claim. And of course, the orders at issue never mandated that the restaurants close entirely or other businesses that were subject to these orders close entirely. The orders specifically allowed increasingly broad operational use, beginning with takeout and delivery, then allowing outdoor dining, indoor dining at increasing capacity. And while it may have been difficult for plaintiffs to pivot to those other uses, that clearly does not take away all potential value of the businesses at issue. In regard to their attempt to state a non-categorical taking claim, the plaintiffs... Can I just ask you a question? Is it prohibited under New York law for a bar or an establishment that is licensed to serve liquor to do so off-premises? That's not prohibited, is it? One can deliver liquor or a mixed drink to... In fact, under these orders, that was specifically allowed and encouraged because regulations that would have prohibited that prior to the orders were suspended to allow restaurants and bars to more easily pivot to that use. In the non-categorical taking area, the plaintiffs explicitly disclaimed a non-categorical taking claim under Penn Central in their complaint and specifically said that the Penn Central analysis did not apply to the claims that they were making. And of course, they never sought to amend their complaint to add that claim and instead try to essentially add that complaint or add that claim on appeal, which is not permitted. But in any event, they failed to allege a taking based on Penn Central for many of the same reasons that even... The plaintiff Italianissimo Ristorante was in fact a restaurant, but the plaintiffs made only very vague conclusory allegations about the investment of resources, the actual financial impact that the orders had on the business. And this analysis under Penn Central, of course, also brings in the intent of the challenged orders, which plaintiffs acknowledged was a laudable goal of preventing the spread of what was then a brand new global pandemic. And that effort to promote the common good would weigh against finding a taking here even if it had been pled. Just addressing briefly the substantive due process and equal protection claims, these both were properly dismissed for similar reasons. The plaintiffs do not allege a fundamental right that was infringed on by the challenged orders. While there is some generalized due process right to choose one's occupation, it's subject to reasonable government regulation. And the plaintiffs did not have a fundamental right to operate their particular businesses. They had a right to pursue a chosen profession. And here they can't plausibly allege that that was impacted by these orders. They could still operate their businesses. They were encouraged to do so. They simply couldn't perform every aspect of it in the same way that they could prior to the outbreak of COVID-19. As a result, the orders were only subject to rational basis review. So in the substantive due process realm, that meant they were presumptively valid so long as they were reasonably related to a legitimate objective. And stemming the spread of COVID-19 has already been found to be not just a legitimate objective, but indeed a compelling one, especially in light of Jacobson. And plaintiffs can't argue that this was not reasonably related to that goal. They may disagree and challenge the effectiveness of the orders, but that is a retrospective analysis that just didn't apply, especially since the orders did not need to be narrowly tailored to that purpose. I see that my time is up, so if the court does not have further questions on this, I would ask the court to affirm the dismissal. Thank you very much. Counsel, you have reserved five minutes. Yes, Your Honor. I know I went over well before, so I understand if you don't want me up here that long. If I may address a few things, though. With regards to the leave to replete, I guess I in particular remember this. This may not be in the record. It was not Ms. Brody. There was another assistant attorney general there, and the focus was not on some of the things we're discussing here, but on how I started about this being an anti-tax case and so forth. At the time, I did say, based on the arguments made in the pre-motion conference letters, I did not seek to replete. Certainly, I think we could be directed down, Judge Nodini, as you were saying, perhaps in such a manner where we at least, if the 11th Amendment, if the court determines that the 11th Amendment precludes us from proceeding against the state in such a manner that at least the claims against the state could proceed in a court of claims. Of course... This docket entry here, this note, is about a pre-motion conference. Isn't that right? Yes, Your Honor. The district court offered the right to replete in response to the defendant stating that it wanted to move to dismiss under 12b-6 or under whatever rule. Is that correct? Yes, Your Honor. We have a holding overturning district court opinions which denied right to replete because at the pre-motion conference, the plaintiff had declined to replete. We essentially said a plaintiff doesn't have to replete before the original pleading has been tested. The time when the plaintiff is under the gun to decide whether to replete or not is after the court has rejected the theory of the complaint. But there's no consequence to declining to replete before the pleading has actually been tested simply because the defendant says I'd like to move to dismiss the complaint. Well, that would be even better then for the plaintiffs. I just wanted to clarify the record on that point. Obviously, the 11th Amendment does not apply to the claims against the city, whatever the court were to determine with regards to those, meaning we could proceed against the plaintiffs, could proceed against the city. And then, you know, potentially proceed sure that any pleadings deficiencies, which we've discussed at some length here, and proceed with regards to the other claims. One note that I don't, and I'm not sure if I have a record reference for this because I think given the way this has come before Your Honors where it's really on a pleading, I don't believe, Judge Oval, you're asking, I don't believe that at the time the initial orders were entered in March that there was this ability to sell the alcohol off premise, as you said. I know that was something that happened later on. It was something that the state and the city, because the orders are nearly identical, did do in order to afford the businesses the ability to proceed. And some survived. And that seems to be an argument that is made in the papers that while other businesses survived, well, then they would not have the claim, certainly not a categorical takings claim. But at least those that were driven out of business initially, however noble the public good, I know counsel mentioned that public good was a concern. I think it is in every takings case, or at least we hope that it is. There was the case in New London where I know there was an argument that public good wasn't even at issue. But in general, when you're dealing with a takings case, the government has done something which most would agree is done for the public good, but there should still be compensation. In any case, as Judge Nardini had pointed out earlier, you didn't allege any of this about how this interfered with your ability to sell liquor. Understood, Your Honor, and that's what I'm saying. If we were to be remanded to the district court, I can at least represent that certainly under Rule 8, Rule 15, this is not, there's not, I don't believe with respect to Ms. Brody, I don't think it says that it was futile to replete. I would need to look back at the decision myself, but at least I'm making the representation that the questions that the court has answered would be able to be addressed by way of a pleading to at least give the plaintiffs the opportunity to proceed. And perhaps, Judge Nardini, as you were suggesting, maybe if they, obviously a discussion to have with plaintiffs if they wanted to proceed against the state to proceed in the court of claims as well. But there is a way, I think, forward that at least two of the plaintiffs have pleaded a categorical takings. Italianissimo is still in business, and I think as we have in the papers, I don't have much time, it does meet a non-categorical taking, and to touch briefly on the other claims, there was a distinction which the city made, and the city owned the orders. It did not have to enter these orders. It used its own law enforcement, in particular and kind of peculiarly the New York City sheriffs to enforce these orders. It wasn't, it can't rely, I think, on the state having in the orders that municipalities could not enter orders contrary to the state orders. They did not need to enter their own orders. Many municipalities did not, nor use their law enforcement the way they did in order to enforce the orders, so they should be liable, and then, I'm running out of time, there should be valid equal protection and substantive due process claims against the city as well. Can I just back up? Of course, Your Honor. To the decretal language, perhaps it is and perhaps it isn't in the district court's ruling. I didn't see where the district court clearly said I think it just said dismissed. I think Your Honor's right, but I would need to look. Is it your view that your claims against the state were dismissed on subject matter jurisdiction grounds or other grounds? Primarily subject matter jurisdiction, certainly. The court did engage in an analysis, certainly with at least regards to the city, with the other claims. I just mean the state. I guess what I'm trying to figure out is do you believe it is the case that your claims against the state were dismissed on subject matter jurisdiction grounds such that the dismissal should be without prejudice to your being able to institute a proceeding in state court against the state defendants? Yes, Your Honor. That is how I think it should be. I do think the district court, though, since it analyzed the takings claim against the city and found that that was not adequately pleaded, certainly the view of the district court, we would need a reversal at least with regards to that or at least the opportunity to amend to address the district court's concerns. Okay. Thank you very much, Your Honor. We'll reserve the decision, and we are adjourned. Thank you.